UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-cv-22651-BLOOM/Elfenbein

AMANDEEP GYANI, ABBY UTAL,
HECTOR ACOSTA, DEBORAH TOMAZ,
ROYA SAYIED, PAULA MARTINEZ, and
ALEXANDRIA REESE, individually and on
behalf of all other similarly situated,

    Plaintiff,

v.

LULULEMON ATHLETICA INC. &
LULULEMON USA INC.,

    Defendants.
_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant lululemon athletica inc., and lululemon usa inc. (collectively "Lululemon" or "Defendants") Motion to Dismiss the First Amended Complaint ("Motion"), ECF No. [29]. Plaintiffs Amandeep Gyani, Abby Utal, Hector Acosta, Deborah Tomaz, Roya Sayied, Paula Martinez, and Alexandria Reese, individually and on behalf of all others similarly situated (collectively "Plaintiffs"), filed a Response in Opposition, ("Response"), ECF No. [46], to which Defendants filed a Reply, ECF No. [47]. The Court has carefully reviewed the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the reasons discussed below, the Motion is granted.

**I.   BACKGROUND**

Lululemon is one of the world's largest and most popular "athleisure" fashion brands. ECF No. [20], at ¶ 2. In October 2020, Lululemon announced its "Be Planet" marketing campaign as part of "the Company's long-term strategy to become a more sustainable and equitable business,

minimize its environmental impact, and accelerate positive change both internally and externally." *Id.* at ¶ 5, 58 (emphasis omitted). The Be Planet campaign included the following commitments by Lululemon:

- 100% of the Company's products will include sustainable materials and end-of-use solutions by 2030;

- Ensure at least 75% of its products contain sustainable materials by 2025;

- Offer guests new options to extend the life of its products by providing resell, repair, and/or recycle options by 2025;

- Source 100% renewable electricity to power the Company's operations by 2021 and reduce carbon emissions across its global supply chain by 60% per unit of value added, meeting its Science-based Targets by 2030; and

- Reduce its freshwater use intensity by 50% to manufacture its products and reduce single-use plastic packaging by 50% by 2025.

*Id.* at ¶ 5, 58.

As part of its Be Planet campaign, Plaintiffs allege that Lululemon made a number of direct environmental claims about the company's products and actions that are false, deceptive, and/or misleading. *Id.* at ¶ 75. For example, in its 2020 Impact Summary, Lululemon states, "[o]ur lives are one with the health of the planet. Our products and actions avoid environmental harm and contribute to restoring a healthy planet." *Id.* at ¶ 76. Further, on its website, Lululemon states, "[b]y adopting and evolving practices and mindful solutions, we enhance the products we offer and contribute to restoring the environment." *Id.* at ¶ 77 (emphasis omitted); *see also id.* at ¶ 78-79. Lululemon pursued its extensive Be Planet marketing campaign through express and implied statements and images on its website, throughout its hundreds of retail stores, and elsewhere. *Id.* at ¶ 7.

Plaintiffs further allege that Lululemon makes false, deceptive, and misleading representations that overemphasize the significance of certain environmental initiatives that

2

provide only minor improvements or benefits relative to the company's overall climate and environmental footprint. *Id.* at ¶ 86. For example, on its website, Lululemon introduces its purported "2030 science-based climate targets," which include "achieving 60% absolute reduction of greenhouse gas (GHG) emissions in all owned and operated facilities (Scope 1 and 2)" and "60% intensity reduction of GHG emissions across [Lululemon's] global supply chain." *Id.* at ¶ 97; *see also id.* at ¶ 98-101.

Plaintiffs also allege that Lululemon's marketing campaign makes deceptive and misleading claims about the company's vision, goals, and commitments. *Id.* at ¶ 107. On its website, Lululemon states, "[w]e're committed to making products that are better in every way-for . . . the planet." *Id.* at ¶ 109 (emphasis omitted). Plaintiffs assert that Lululemon is responsible for significant GHG gas emissions, landfill waste, and release of microplastics into the environment. *Id.* at ¶ 10. Critically, Lululemon's GHG emissions have more than doubled since the start of the Be Planet campaign in 2020, as confirmed by Lululemon's own reporting. *Id.* at ¶ 11, 68, 84, 110. The detrimental impact of Lululemon's products and actions on the environment is made worse by the company's use of air and marine freight to transport its products, despite the fact that air freight generates significantly more greenhouse gas emissions than marine shipping. *Id.* at ¶ 70. Further, Lululemon's products most heavily rely on polyester and nylon – materials that are products from fossil fuels. *Id.* at ¶ 84, 111. Lululemon's supply chain operations also used more than 29 billion liters of freshwater in 2022. Finally, Plaintiffs allege that Lululemon is not even on track to meet its own targets. *Id.* at ¶ 105.

Plaintiffs claim they were exposed to the deceptive and misleading messages in Lululemon's marketing campaign and believed that Lululemon was an environmentally friendly company with a minimal environmental footprint that sold sustainably produced products, and that

the company's actions and products contribute to improving the environment and the restoration of a healthy planet. *Id.* at ¶ 20-27. Plaintiffs relied on Lululemon's deceptive and misleading marketing messages in deciding to purchase its products. *Id.* Plaintiffs then purchased Lululemon's products in reliance on its deceptive and misleading marketing messages at various times at Lululemon's retail stores. *Id.*

Plaintiffs Amandeep Gyani, Abby Utal, Deborah Tomaz, Paula Martinez, Hector Acosta, and Julez Blake (collectively "the Florida Plaintiffs") made such purchases at Lululemon retail stores, including Lululemon's locations in Miami Beach, Boca Raton, Brickell, Aventura, and West Palm Beach. *Id.* at ¶ 20-25. Alexandria Reese ("New York Plaintiff") made such purchases at Lululemon retail stores, including Lululemon's location in Hoboken, New Jersey. *Id.* at ¶ 26. Plaintiff Roya Sayied ("California Plaintiff") made such purchases at Lululemon retail stores, including Lululemon's locations in Santa Monica and San Francisco. *Id.* at ¶ 27.

The Amended Complaint asserts Five Counts: (1) Violation of the Florida Deceptive and Unfair Trade Practices Act Under Florida Statutes § 501.201; (2) Violation of the New York General Law § 349; (3) Violation of the California Legal Remedies Act Under the California Civil Code § 1770; (4) Violation of the California Unfair Competition Law Under the California Business and Professional Code § 17200; and (5) Unjust Enrichment. ECF No. [20]. Plaintiffs seek money damages and injunctive relief, together with attorneys' fees and costs, restitution, and disgorgement.

In its Motion, Lululemon contends that Plaintiffs lack Article III standing, and the Court lacks personal jurisdiction over the nonresident Plaintiffs' state-law claims. ECF No. [29]; ECF No. [47]. Moreover, Lululemon argues that Plaintiffs fail to state a plausible claim for relief. *Id.* Plaintiffs respond that they suffered an injury in fact and have standing to bring their claims. ECF

No. [46]. Further, Plaintiffs assert that the Court can adjudicate the nonresident Plaintiffs' claims. *Id.*

## II. LEGAL STANDARD

### A. Motion to Dismiss

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* "A facially plausible claim must allege facts that are more than merely possible. . . . But if allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If the allegations satisfy the elements of the claims asserted, a defendant's motion to dismiss must be denied. *See id.* at 556.

Further, "[o]n a Rule 12(b)(6) motion to dismiss, '[t]he moving party bears the burden to show that the complaint should be dismissed.'" *Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) (quoting *Mendez–Arriola v. White Wilson Med. Ctr. PA*, 2010 WL 3385356, at *3 (N.D. Fla. Aug. 25, 2010)); *see also Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007) ("We are required to accept the facts as set forth in the plaintiff's complaint as true, and our consideration is limited to those facts contained in the pleadings and attached exhibits.").

### B. Standing

Under Article III of the United States Constitution, federal courts are limited to adjudicating only "Cases and Controversies." U.S. Const Art. III § 2; *see Stalley ex rel. U.S. v.*

*Orlando Regional Healthcare Sys., Inc.*, 524 F.3d 1299, 1232 (11th Cir. 2008). For a case or controversy to exist, the Plaintiff must have standing to bring the action. *See I.L. v. Alabama*, 739 F.3d 1273, 1278 (11th Cir. 2014) ("Standing is one of the Article III case or controversy requirements[.]"). "To have standing, the plaintiff[] must demonstrate injury in fact, causation, and redressability. Failure to satisfy any of these three requirements is fatal" *Id.* (internal citations omitted).

"The 'foremost' standing requirement is injury in fact." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020). "An injury in fact is 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *I.L.*, 739 F.3d at 1278; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "A 'concrete' injury must be '*de facto*'—that is, it must be 'real, and not abstract.'" *Trichell*, 964 F.3d at 996 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)). However, an injury need not yet have occurred to constitute an injury in fact. A harm yet to occur will still satisfy the case and controversy requirement if is "sufficiently substantial and imminent." *DiPierro v. Fla. Health Sciences Ctr., Inc.*, 2024 WL 3051320, at *5 (M.D. Fla. June 18, 2024). A harm is imminent if there is "a realistic danger of sustaining a direct injury as a result" of the challenged conduct. *Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1161 (11th Cir. 2008) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

### C. Futility of Amendment

Rule 15 of the Federal Rules of Civil Procedure directs that before trial, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend should be "freely given" absent a showing of "futility of amendment." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). When an amended complaint would still be "properly dismissed or be immediately subject to

summary judgment for the defendant," a district court could determine that leave to amend the complaint is futile. *Rivas v. Bank of N.Y. Mellon*, 777 F. App'x 958, 965 (11th Cir. 2019) (quoting *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)).

## III. DISCUSSION

### A. Standing

Lululemon contends that the Amended Complaint fails to plead an injury in fact to support Plaintiffs' claims for money damages or for injunctive relief. ECF No. [29] at 14, 28-29. Plaintiffs respond that they suffered an economic injury because Lululemon's misleading greenwashing campaign caused Plaintiffs to pay a price premium for Lululemon's products. ECF No. [46] at 12-14. Plaintiffs further assert that they sufficiently allege a threat of future harm because Plaintiffs would like to purchase Lululemon's products in the future. *Id.* at 24-25. Because "standing is not dispensed in gross . . . plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Therefore, the Court addresses each point in turn.

#### i. Injury in Fact: Money Damages

"A person experiences an economic injury when, as a result of a deceptive act or an unfair practice, he is deprived of the benefit of his bargain." *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019). Lululemon argues that Plaintiffs' boilerplate allegations of paying a price premium are insufficient to assert an economic injury, and Plaintiffs were required to set forth facts that the products were worth less or defective. ECF No. [29] at 14. Plaintiffs respond that they have established an economic injury by alleging that Lululemon's misleading greenwashing campaign caused them to pay a price premium for Lululemon's products. ECF No. [46] at 12; *see* ECF No. [20] at ¶¶ 139, 151, 165, 176, 184. For support, Plaintiffs cite a myriad of cases where courts determined that a plaintiff had standing because it suffered an economic injury

by paying a price premium for a product that contained an allegedly deceptive label. *See, e.g.*, *Valiente v. Unilever United States, Inc.*, 2022 WL 18587887, at *5 (S.D. Fla. Dec. 8, 2022) ("Plaintiff suffered an actual monetary injury by paying a price premium due to the Product's allegedly deceptive label."); *Piescik v. CVS Pharm., Inc.*, 576 F. Supp. 3d 1125, 1130 (S.D. Fla. 2021) ("Payment of an allegedly unauthorized premium constitutes an economic injury.").

However, as Lululemon highlights, mere allegations of having paid a price premium are insufficient – a plaintiff must tie the value of the product to any purported misrepresentation. *See Valiente v. Publix Super Mkts., Inc.*, 2023 WL 3620538 (S.D. Fla. May 24, 2023). Two cases cited to by Plaintiffs are instructive. In *Unilever*, the defendant sold an antiperspirant deodorant containing a label that stated that the product contained natural oils. 2022 WL 18587887, at *1. However, the predominant oil was a synthetic ingredient, and the complaint specifically alleged that the value of the product purchased was materially less than what was represented. *Id.* The court determined that the plaintiff alleged a sufficient injury in fact because she claimed to have paid a price premium due to this allegedly deceptive label. *Id.* at *5. Similarly, in *Piescik*, the plaintiff argued that he did not receive the benefit of the bargain because a hand sanitizer he purchased would not have actually killed 99.99% of all germs, despite its claim to the contrary. 576 F. Supp. 3d at 1130. The court found that, for standing purposes, the plaintiff pled a concrete economic injury. *Id.*

Here, in contrast, Plaintiffs allege that but for Lululemon's deceptive acts, Plaintiffs "would not have paid as much for such products and, thus, they did not receive the benefit of the bargain, and they suffered out-of-pocket loss." ECF No. [20] at ¶ 139; *see also* ECF No. [20] at ¶¶ 151, 165, 176, 184. This case is analogous to the circumstances in *Valiente*. There, the plaintiff purchased honey-lemon cough drops, apparently attracted by the phrase "honey-lemon," the

"pictures of these ingredients," and the statement that the product "soothes sore throats." 2023 WL 3620538, at *1. From those representations, the plaintiff believed that the cough drops contained lemon ingredients and were capable of soothing bronchial passages. *Id.* The product's front label, however, disclosed that the active ingredient was "Menthol Cough Suppressant/Oral Anesthetic," and the ingredient list did not include lemon. *Id.* The court ultimately held that the plaintiff failed to assert an economic injury because the plaintiff did not allege that the "honey-lemon cough drops were defective, did not work as advertised, or otherwise were so flawed as to render them worthless." 2023 WL 3620538, at *5.

The same conclusion is warranted here. As in *Valiente*, Plaintiffs fail to allege that Lululemon's products were defective or worthless. Rather, similar to how the active ingredient was disclosed on the defendant's product in *Valiente*, the Amended Complaint alleges that Lululemon's products "are made with polyester and nylon, which are manufactured from fossil fuels." 2023 WL 3620538, at *1; ECF No. [20] at ¶ 66. Further, as Plaintiffs allege, Lululemon consistently reported its GHG emissions, *see* ECF No. [20] at ¶¶ 64, 66, 68, and that many of its manufacturers and suppliers are in countries with significant fossil fuel reliance, *id.* at ¶ 66. The Amended Complaint fails to allege a factual connection between the value of Lululemon's products and Lululemon's representations. *See Valiente*, 2023 WL 3620538, at *5. The Amended Complaint contains nothing more than a subjective belief that plaintiffs paid a price premium.

Further, the Amended Complaint does not allege that there was any deceptive act or unfair practice regarding the *products* sold to Plaintiffs. Indeed, the "deception" Plaintiffs purportedly relied on amounts to nothing more than goals and promises contained in a press release or on Lululemon's website. *See, e.g.*, ECF No. [29] at ¶ 58 ("The Company's Impact Agenda outlines its multi-year strategies to address critical social and environmental issues with 12 goals to drive

9

progress. These include targeting areas . . . with specific commitments to . . . make 100% of its products with sustainable materials and end-of-use solutions by 2030." (emphasis omitted)); ECF No. [29] at ¶ 97 ("On its website . . . Lululemon introduces its purported '2030 science-based climate targets,' which include 'achieving: 60% absolute reduction of greenhouse gas (GHG) emissions in all owned and operated facilities (Scope 1 and 2)' and '60% intensity reduction of GHG emissions across our global supply chain (Scope 3)[.]'" (emphasis omitted)); ECF No. [29] at ¶ 98 ("Lululemon claims on its website that '[w]e are making progress on our climate goals around carbon reduction.'"). Plaintiffs' allegations fail to tie any aspect of Lululemon's statements to the purported price premium that Plaintiffs paid for Lululemon's products. *See Valiente*, 2023 WL 3620538, at *5. These blanket assertions are insufficient to constitute an economic injury, and therefore Plaintiffs lack Article III standing.

### ii. Injury in Fact: Injunctive Relief

To have standing to bring suit for injunctive relief, a plaintiff must also show "a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001). "Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party shows 'a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury.'" *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329 (11th Cir. 2013) (emphasis in original) (quoting *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001)).

Lululemon contends that Plaintiffs lack standing for injunctive relief because they have not alleged an imminent threat of being harmed again in a similar manner. ECF No. [29] at 28. Plaintiffs respond that the Amended Complaint plausibly alleges future harm because it states that they would like to purchase Lululemon's products if they can rely on Lululemon to be truthful in

their marketing statements regarding the sustainability and environmental impact of Lululemon's products and actions. ECF No. [46] at 24; ECF No. [20] at ¶ 140.

Lululemon presents two cases for support. In *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1254 (11th Cir. 2023), the complaint alleged only that the plaintiffs wanted to purchase the defendants' brain performance supplements but were unable to rely on defendants' representations regarding the effectiveness of their products in deciding whether to purchase the products in the future. The court determined that such allegations were "plainly insufficient to establish a threat of imminent or actual harm," because "'some day' intentions – without any description of concrete plans, or indeed even any specification on *when* the some day will be – do not support a finding of the 'actual or imminent' injury that our cases require." *Id.* at 1255 (emphasis in original) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992)).

The court in *Piescik* reached the same conclusion, finding that that the plaintiff could not "possibly be harmed in the future since he is now acutely aware that Defendant's hand sanitizer kills only 99.99% of many common harmful germs and bacteria found on the hands, not 99.99% of all germs in existence." *Piescik v. CVS Pharm., Inc.*, 576 F. Supp. 3d 1125, 1131 (S.D. Fla. 2021); *see also Valiente v. Publix Super Markets, Inc.*, 2023 WL 3620538, at *6 (S.D. Fla. May 24, 2023) (finding that the plaintiff failed to plead standing for injunctive relief because his "allegations make clear that he will not purchase more of the purportedly deceptive products so long as the labelling does not meet his standards" (cleaned up)).

Plaintiff argues that those cases are easily distinguishable because the nature of the misrepresentations and products in those cases made it implausible that the plaintiffs would purchase the products in the future. ECF No. [46] at 25. Plaintiffs' contention is misplaced, as the analysis in *Williams* and *Piescik* focused on how the plaintiffs' alleged only a *potential* interest in

11

purchasing the products again. *See Williams*, 65 F.4th at 1254-55; *Piescik*, 576 F. Supp. 3d at 1131. Both cases contained allegations that the plaintiffs "would like" to purchase the defendants' products "if" the defendant developed improved products. *Williams*, 65 F.4th at 1255; *Piescik*, 576 F. Supp. 3d at 1130. Therefore, any alleged harm was conjectural and hypothetical, not actual or imminent, as required by Article III. Similarly, the Amended Complaint alleges that Plaintiffs "would like" to purchase Lululemon's products, but "only if" they can rely on Lululemon "to be truthful in their marketing statements regarding the sustainability and environmental impact of Lululemon's products and actions." ECF No. [20] at ¶ 140. Plaintiffs fail to allege any threat of imminent injury and therefore lack standing to pursue injunctive relief.

Because the Court has concluded that Plaintiffs do not adequately plead Article III standing, the Court lacks subject matter jurisdiction to adjudicate Plaintiffs' claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (quoting *Ex Parte McCardle*, 7 Wall. 506, 514, 19 L.Ed. 264 (1868))). The Court therefore does not reach the merits of the Motion.

### B. Leave to Amend

"Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction[.]" *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991). "A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Syst., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).

Nevertheless, Plaintiffs seek leave to amend the Amended Complaint should Lululemon's Motion be granted. ECF No. [46] at 27. Leave to amend should be "freely given" absent a showing

of "futility of amendment." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). However, "our precedent is clear that a request for leave to amend embedded in an opposition memorandum does not properly put the issue before the district court." *Advance Tr. & Life Escrow Servs., LTA v. Protective Life Ins. Co.*, 93 F.4th 1315, 1337 (11th Cir. 2024); *see Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277-78 (11th Cir. 2018) (stating that a request for leave to amend is not properly raised if embedded in a memorandum in opposition to a motion to dismiss and not made by motion). Because Plaintiffs' request for leave to amend is embedded in their Response to the Motion, it is not procedurally proper, and must therefore be denied. *See Valiente v. Publix Super-Markets, Inc.*, 2023 WL 3620538, at *7 (S.D. Fla. May 24, 2023) (dismissing complaint for lack of standing without prejudice, but without leave to amend, because the request was procedurally defective and lacking in substantive support); *Ramirez v. Kraft Heinz Foods Co.*, 684 F. Supp. 3d 1253, 1261 (S.D. Fla. 2023) (dismissing without leave to amend because the request was not procedurally proper).

IV.   **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Lululemon's Motion**, ECF No. [29]** is **GRANTED**.
2. The Amended Complaint, **ECF No. [20]**, is **DISMISSED WITHOUT PREJUDICE** and **without leave to amend**.
3. The Clerk of Court is directed to **CLOSE** this case. If Plaintiffs file a new Complaint, they must do so by opening a new case.
4. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

Case No. 24-cv-22651-BLOOM/Elfenbein

**DONE AND ORDERED** in Chambers at Miami, Florida, on February 18, 2025.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record